AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico ▼

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

White iPhone recovered from Diana LORENZO, further
described in ATTACHMENT A.

)
)
)
)
)
)

Case No.  **23mr1906**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A (incorporated by reference).

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| a. 18 U.S.C. § 2, b. 18 U.S.C. § 922(a)(1)(A) c. 21 U.S.C 5861, d. 18 U.S.C. § 933 | Aiding and Abetting; Dealing and manufacturing of firearms without a license; Possession of a firearm which is not registered in the National Firearms; and Trafficking in firearms |

The application is based on these facts:
Please see the attached Affidavit of ATF Special Agent Amber Pace, which is incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Amber Pace, ATF Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephonically sworn and electronically signed *(specify reliable electronic means).*

Date: 10/10/2023

_____
*Judge's signature*

City and state: Albuquerque, New Mexico

Hon. Steven C. Yarbrough, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF:

White iPhone recovered from Diana
LORENZO, further described in
ATTACHMENT A.

Case No. _____

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH

I, Amber Pace, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search the SUBJECT DEVICE, further described in

ATTACHMENT A and ATTACHMENT B, belonging to Diana LORENZO for evidence of

violations of:

    a.      18 U.S.C. § 2 – Aiding and Abetting;

    b.      18 U.S.C. § 922(a)(1)(A) – Dealing and manufacturing of firearms

            without a license;

    c.      21 U.S.C 5861 – Possession of a firearm which is not registered in the

            National Firearms and Transfer Record; and

    d.      18 U.S.C. § 933 – Trafficking in firearms.

2.      The SUBJECT DEVICE is further described as a white iPhone cellular telephone,

recovered from within the Federal Firearms Licensee (FFL) Shooter's Den, belonging to Diana

LORENZO. The SUBJECT DEVICE was seized on October 5, 2023, during the execution of a

Federal Search Warrant (23-MR-1882) issued by the Honorable Steven. C Yarbrough. I seek

authorization to search the SUBJECT DEVICE for the items described in ATTACHMENT B which is incorporated throughout by reference. The SUBJECT DEVICE is in ATF's possession and has been since it was seized from LORENZO on October 5, 2023.

3.       I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since August 2020. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516. I am a graduate of the University of Arizona, holding a bachelor's degree in public management and policy and a master's degree in business administration. I have also attended and graduated from the Federal Law Enforcement Training Center and the ATF National Academy.

4.       I have training and experience investigating violations of Federal law, including investigations involving the forensic examination of electronic devices and cellular telephones. I have an understanding of the various roles played by individuals or groups involved in firearms trafficking, narcotics distribution, the unlawful use or possession of firearms during crimes of violence and/or drug trafficking, and am familiar with the manner of operation of some organized criminal groups, such as drug cartels and street gangs.

5.       I am familiar with the information contained in this Affidavit based upon the investigation that myself and other law enforcement officers have conducted, on my conversations with other law enforcement officers or industry operations investigators who have engaged in various aspects of this investigation, and based upon my review of reports written by other law enforcement officers involved in this investigation. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and

every fact known to me concerning this investigation. I have set forth only those facts that I believe are relevant to the determination of probable cause to support the issuance of the requested warrant. When the statements of others are set forth in this Affidavit, they are set forth in substance and in part.

## EVIDENCE COMMONLY FOUND ON CELL PHONES AND COMPUTERS

### Evidence of Criminal Activity Frequently Found on Phones

6.     Based on my training, experience, and participation in this and in similar investigations, I know that individuals involved in illegal firearms trafficking and unlicensed dealing and manufacturing of firearms often conceal evidence of their criminal activities and may use cellular telephones as a tool or instrumentality in committing their criminal activity. Firearm traffickers and unlicensed dealers often take, or cause to be taken, photographs and/or videos of their property and their firearms or firearm parts, typically for the purpose of advertising these goods for sale to others. Information stored in electronic form on all cellular phones, such as the SUBJECT DEVICE, can provide evidence of trafficking and illegal firearms dealing. Firearm traffickers and unlicensed dealers frequently use cellular phones, such as the SUBJECT DEVICE, to communicate with co-conspirators, customers, sources of supply, and others involved in the firearm trade. As a result, evidence of firearm trafficking and unlicensed dealing could be found in text messages, call logs, photographs, videos, and other stored data on the cellular phone.

7.     The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify

the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package.

8. The stored list of recent received, missed, and sent calls, whether through traditional cellular service or through social media or other communication applications, is important evidence. It identifies telephones or application users recently in contact with the telephone user. This is valuable information in a criminal investigation because it will identify telephones used by other conspirators, and it confirms the date and time of contacts. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying criminal associates.

9. Stored text messages, whether through traditional cellular service or through social media or other communication applications, are important evidence, similar to stored numbers. Agents can identify both criminal associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

10. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. These photos are often taken, stored, or sent electronically using traditional text messaging, social media, other communication applications, uploaded to cloud storage services, or publicly shared or posted on social media. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can

have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, and where assets might be located.

11.     Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

## PROBABLE CAUSE

### ATF Warning Conference

12.     From November 14 to November 15, 2022, ATF Industry Operations Investigator (IOI) Glenn McGuire conducted a compliance inspection of the FFL. During the records review of the ATF Forms 4473, IOI McGuire noted store manager STEPHEN had acquired a large number of AR-15 receivers during the previous 12-month period. A review of the store Acquisitions and Dispositions Record Book (A&D Records) showed sixty-one (61) instances in which receivers were acquired back into the inventory from STEPHEN as completed firearms. IOI McGuire noted eleven (11) additional receivers acquired by STEPHEN which had not returned to the FFL as completed firearms. STEPHEN reported that he knew he was required to have a license to build completed firearms but stated that he thought a license was only required to manufacture receivers. STEPHEN stated he has been building completed AR-15 style firearms for several years.

13.     On March 21, 2023, and as a result of the inspection, ATF held a warning conference with the following individuals in attendance: ATF Albuquerque II (IO) Field Office Field Division: James Ray Newell, Glenn McGuire and Urania Reinoso. Responsible person(s) representing the licensee: Diana Lynn LORENZO and Non-Responsible person(s) representing the licensee: STEPHEN. The FFL was cited for the following violations:

- 27 CFR 478.126.a: Failure to report multiple sales or other dispositions of pistols and revolvers, with twenty-three (23) instances.

- 18 U.S.C. 923(g)(5)(a): Failure to report multiple sales or other dispositions of certain rifles, with three (3) instances.

- 27 CFR 478.102(c): Failure to initiate a new NICS check after 30-day lapse of initial check, with one (1) instance.

- 27 CFR 478.124(c)(1): Failure to obtain a completed ATF F 4473, with eighty-one (81) instances.

- 27 CFR 478.21(a): Failure to complete forms as prescribed, with twenty-one (21) instances.

- 27 CFR 478.124(c)(3)(i): Failure to verify or record identification document on ATF F 4473, with eighteen (18) instances.

- 27 CFR 478.124(c)(3)(iv): Failure to verify or record NICS contact information on ATF F 4473, with one (1) instance.

14.     As a result of the inspection and Warning Conference, ATF IOIs advised both the RP and STEPHEN that a manufacturing license was required to engage in the business of manufacturing firearms and the ATF Form to apply for said license was provided.

### Contact at the FFL

15.     On April 21, 2023, ATF agents contacted STEPHEN at the FFL in reference to the purchase of machinegun conversion devices (MCD). STEPHEN retrieved a rifle that was displayed on a wall in the store with a sign marked "Custom Build". STEPHEN advised agents that the MCD, more specifically a forced reset trigger (FRT), was installed in the rifle. Before

agents left the FFL, STEPHEN made several comments regarding him and another store employee, Whitney Bisetti, manufacturing firearms that were displayed in the store for sale.

16.    On June 6, 2023, an ATF Firearms Enforcement Officer determined the firearm seized from STEPHEN on April 21, 2023, was a "machinegun" as defined under 26 U.S.C. § 5845(b)[1]. 18 U.S.C. 922(o) makes it unlawful to transfer or possess a machinegun, except for transfers to or by, or possession by or under the authority of, the United States or a State, or machineguns lawfully possessed before May 19, 1986 (that is, machineguns in the U.S. and registered in the National Firearms Registration and Transfer Record (NFRTR)). The firearm was also determined to be an NFA item and defined as a "short-barreled rifle" under 18 U.S.C. § 921(a)(8)[2].  Based on my training and experience, I know that both machineguns and short-barreled rifles are required to be registered with the National Firearms Act Branch; such registrations are maintained within the NFRTR. In May 2023, and on October 3, 2023, a query of the NFRTR was conducted of STEPHEN's personal information with negative results for the firearm seized on April 21, 2023.

17.    FLS is an ATF database that stores FFL information to include Responsible Persons (RPs) for the license and license type. The only RP listed on the license for the FFL was, Diana LORENZO. The Types of licenses an FFL can obtain include but are not limited to: Type 01- Dealer in Firearms Other Than Destructive Devices and Type 07- Manufacturer of Firearms

---

[1] 26 U.S.C. § 5845(b) defines a machinegun as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger to include any part or combination of parts designed and intended for use in converting a weapon into a machinegun.

[2] 18 U.S.C. § 921(a)(8) defines a short-barreled rifle as a rifle having one or more barrels less than sixteen inches in length and any weapon made from a rifle if such weapon, as modified, has an overall length of less than twenty-six inches.

Other Than Destructive Devices. In May 2023, and on October 3, 2023, a query of the Federal

Licensing System (FLS) was conducted with STEPHEN's personal information with negative

results and the FFL only obtained a Type 01 license. Additionally, ATF will not approve the

transfer of an NFA firearm unless it has been registered to the transferor in the NFRTR. NFA

firearms may only be registered upon their lawful making, manufacture, or importation, or upon

the transfer of firearms already registered. Furthermore, an ATF Form 4 is required for a private

transfer of NFA items, which must be accompanied by the transferees' fingerprints and

photographs on FBI Forms FD-258 and, among several additional steps, must be approved by

ATF before the transfers may be made.

### Controlled Purchase

18.     On May 12, 2023, an ATF undercover (UC) conducted a controlled purchase of

firearms from STEPHEN at the FFL Shooter's Den. The UC purchased a SilencerCo, model

SCO15, multi caliber pistol, bearing serial number S-14881, a Glock, model 17Gen5, 9x19

caliber pistol, bearing serial number BZZV138, and a pistol brace among other items.

19.     On June 7, 2023, an ATF Firearms Enforcement Officer determined the

SilencerCo firearm purchased by the UC on May 12, 2023, to be as defined as an "any other

weapon" under, 26 U.S.C. § 5845(e).[3] Based on my training and experience, I know that a

firearm fitting the definition of "any other weapon" is federally required to be registered with the

National Firearms Act Branch and such registrations are maintained within the National Firearms

---

[3] 26 U.S.C. § 5845 (e) defines "any other weapon" as any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive.

Registration and Transfer Record (NFRTR) database. In May 2023, and on October 3, 2023, a

query of the NFRTR was conducted of STEPHEN's personal information with negative results

for the firearms purchased on May 12, 2023, by the ATF UC. The ATF UC was not required to

complete any additional paperwork outside of the ATF Form 4473 for the transfer of the

firearms.

<strong>Controlled Purchase</strong>

20.     On July 13, 2023, an ATF UC conducted a controlled purchase of a firearm from

STEPHEN at the FFL Shooter's Den. STEPHEN provided the UC with a firearm that STEPHEN

identified as a "$6500 Real Mark 18", later identified as an LMT Defense, model MARS LS,

5.56 caliber firearm, bearing serial number LXS24806...

21.     On July 18, 2023, an ATF Firearms Enforcement Officer determined the firearm

purchased by the UC on July 13, 2023, was defined as "any other weapon" under, 26 U.S.C. §

5845(e). Based on my training and experience, I know that a firearm fitting the definition of "any

other weapons" are federally required to be registered with the National Firearms Act Branch

and such registrations are maintained within the National Firearms Registration and Transfer

Record (NFRTR) database. In May 2023, and on October 3, 2023, a query of the NFRTR was

conducted of STEPHEN's personal information with negative results for the firearms purchased

on July 13, 2023, by the ATF UC. The ATF UC was not required to complete any additional

paperwork outside of the ATF Form 4473 for the transfer of the firearms.

<strong>Controlled Purchase</strong>

22.     On August 9, 2023, an ATF UC conducted a controlled purchase of a firearm

from STEPHEN at the FFL. STEPHEN walked towards the "Custom Build" section of the store

and removed a Noveske firearm. During the sale, STEPHEN grabbed a black B5 Systems stock, attached it and stated, "if you are going to break one fucking rule you might as well break all the fucking rules, right?" STEPHEN then handed the firearm back to the ATF UC. S/A Pace understood STEPHEN to be referring to the process of attaching a "brace" to a firearm thus potentially changing the classification of a firearm from a pistol to a short-barreled rifle.

23.     During the sale, STEPHEN took photographs with his cell phone of the Noveske firearm. Shortly after, STEPHEN received a call from Bisetti. While on the call, Bisetti asked STEPHEN, "we are not leaving that stock on, right. That's just for picture purposes, correct?" STEPHEN then replied with, "It's sold with it sweetheart." BISETTI then stated, "that is fine but it's not on it correct?" STEPHEN then stated, "it's on it right now" to which Bisetti replied with, "ok but is the person buying it a Fed?" STEPHEN then stated, "yes, he's buying all of it" to which Bisetti replied with, "that is fine, he is not a narc." STEPHEN then replied with, "oh, no he is fine" to which Bisetti replied with, "oh, ok." STEPHEN then stated, "he's the one that bought my Mark 18 and your MCX." Bisetti then replied with, "oh man, that guy is getting sweet shit. I appreciate the support."

### Interview of LORENZO

24.     On October 6, 2023, S/A Pace and Brenton Hutson contacted LORENZO during the execution of a federal search warrant at the FFL, Shooter's Den, located at 2729 San Mateo Blvd NE, Albuquerque, New Mexico, 87110. S/A Pace and Hutson conducted a knock and announce at the entrance to the FFL and were clearly marked with ATF/Police markings. LORENZO was advised of her rights and agreed to speak with agents. LORENZO acknowledged being the RP, being the sole owner of the FFL, and having the responsibility over the finances. During the interview, LORENZO stated that her store manager, STEPHEN, ran the

store and pushed her out by changing passwords for the stores surveillance system and cut off communication with her within the last year. She further stated that STEPHEN hired Bisetti without LORENZO's knowledge and consent. LORENZO also stated that STEPHEN changed the hours of operation of the store and closed the store to go on a vacation without her knowledge. She stated, "I should have taken action and I didn't".

25.     LORENZO stated that prior to the ATF Warning issued about manufacturing, she authorized STEPHEN to place firearms under consignment within the FFL in order to make up financially for the smaller salary STEPHEN was being paid. LORENZO stated that she advised STEPHEN that he was no longer allowed to continue this behavior but then acknowledged that she was aware that STEPHEN made approximately $58,400 between 2021-2023 from consignment sales.

26.     LORENZO stated that STEPHEN was allowed to display his personal firearms on a wall within the FFL, but they were supposed to be marked as not for sale. LORENZO then acknowledged that STEPHEN was operating a "gun store within a gun store" and further acknowledged that Bisetti was also engaging in the same manner. LORENZO added that she observed, after reviewing the FFL records, that STEPHEN and Bisetti were transferring out their own personal firearms to customers while the FFL firearms sales were decreasing. S/A Pace understood this to mean that STEPHEN and Bisetti were using the FFL to complete private sales of firearms. LORENZO stated that she would discuss the business with STEPHEN using the SUBJECT DEVICE. LORENZO stated that she received text messages from STEPHEN to include messages about closing the store and quitting the FFL in September 2023. LORENZO also stated that she would receive notification via SUBJECT DEVICE whenever the store was accessed.

27.     During the interview LORENZO noted that she does not have knowledge of firearms and is unfamiliar with gun sales and parts and therefore relied on the manager, STEPHEN, for her business. Additionally, LORENZO stated that STEPHEN was very familiar with ATF firearms regulations.

## TECHNICAL TERMS

28.     Based on my training and experience, and that of other more experienced law enforcement officers, I use the following technical terms to convey the following meanings:

   a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite

contains an extremely accurate clock. Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that

are publicly available. A GPS antenna on Earth can receive those signals. When

a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and

sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing

computer programs. Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail. PDAs

usually include a memory card or other removable storage media for storing data

and a keyboard and/or touch screen for entering data. Removable storage media

include various types of flash memory cards or miniature hard drives. This

removable storage media can store any digital data. Most PDAs run computer

software, giving them many of the same capabilities as personal computers. For

example, PDA users can work with word-processing documents, spreadsheets,

and presentations. PDAs may also include global positioning system ("GPS")

technology for determining the location of the device.

29.    Based on my training, experience, and research, I know that the SUBJECT

DEVICE has capabilities that allows it to serve as a wireless telephone, digital camera, portable

media player, GPS navigation device, and PDA. In my training and experience, examining data

stored on devices of this type can uncover, among other things, evidence that reveals or suggests
who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30.     Based on my knowledge, training, and experience, I know that electronic devices
can store information for long periods of time. Similarly, things that have been viewed via the
Internet are typically stored for some period of time on the device.  This information can
sometimes be recovered with forensics tools.

31.     *Forensic evidence*.  As further described in ATTACHMENT B, this application
seeks permission to locate not only electronically stored information that might serve as direct
evidence of the crimes described on the warrant, but also forensic evidence that establishes how
the SUBJECT DEVICE was used, the purpose of its use, who used it, and when.  There is
probable cause to believe that this forensic electronic evidence might be on the SUBJECT
DEVICE because:

    a. Data on the storage medium can provide evidence of a file that was once on the
storage medium but has since been deleted or edited, or of a deleted portion of a
file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the
device.  This "user attribution" evidence is analogous to the search for "indicia of
occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may,
after examining this forensic evidence in its proper context, be able to draw
conclusions about how electronic devices were used, the purpose of their use, who
used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

33.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES

34.     Based upon the evidence provided, it is reasonable to believe the SUBJECT

DEVICE was utilized to further criminal activity or contains evidence of criminal activity evidenced by communications between LORENZO and her associates, including but not limited to STEPHEN. Due to the manner in which the SUBJECT DEVICE was reportedly used to discuss the FFL business, it is reasonable to believe the SUBJECT DEVICE was used as an instrumentality of the crimes under investigation or contains evidence of the crimes committed by STEPHEN and possibly others.

## CONCLUSION

35.    Based on the foregoing, I respectfully submit that probable cause exists to search the SUBJECT DEVICE, described in ATTACHMENT A, for evidence, fruits, and instrumentalities of 18 U.S.C. § 2- Aiding and Abetting; 18 U.S.C. § 922(a)(1)(A) – Dealing and manufacturing of firearms without a license; 21 U.S.C 5861– Possession of a firearm which is not registered in the National Firearms and Transfer Record; and 18 U.S.C. § 933 – Trafficking in firearms, as described in ATTACHMENT B.

Respectfully submitted,

Amber Pace
Special Agent
ATF

Electronically signed and telephonically sworn
on October    10th 2023.

Honorable Steven C. Yarbrough
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Places to Be Searched - Subject Device

**A.)** SUBJECT DEVICE: The SUBJECT DEVICE is further described as a white iPhone cellular telephone, recovered from within the Federal Firearms Licensee (FFL) Shooter's Den, belonging to Diana LORENZO and seized on October 5, 2023. Further identified in the photographs copied below, which were taken at the ATF Albuquerque Field Office on October 6, 2023. The device is currently located in evidence at 201 Third St. NW Suite 1550, Albuquerque, New Mexico, 87102:

 

## ATTACHMENT B

DESCRIPTION OF EVIDENCE TO BE SEARCHED

**Evidence to be Seized**

1. All records between May 1, 2023 – October 5, 2023, on the SUBJECT DEVICE which constitute evidence, fruits, and instrumentalities of 18 U.S.C. § 2- Aiding and Abetting; 18 U.S.C. § 922(a)(1)(A) – Dealing and manufacturing of firearms without a license; 21 U.S.C 5861– Possession of a firearm which is not registered in the National Firearms and Transfer Record; and 18 U.S.C. § 933 – Trafficking in firearms, to include:

   a. Information related to any firearm possessed during the course of the crimes listed above, including the identities of who owned, possessed, and used the firearms during the course of the crimes;

   b. Any communication with or among co-conspirators, suppliers, or customers related to the crimes listed above;

   c. Any information relating to the planned distribution or planned use of the proceeds of the crimes listed above;

   d. Any subscriber information or contact information to include, names, addresses, telephone numbers, email addresses or other identifiers related to the crimes listed above;

   e. Any call log information, including missed, incoming and outgoing calls and any information associated with those numbers related to the crimes listed above;

   f. Any photographs, video and audio files related to the crimes listed above;

g. Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications related to the crimes listed above;

h. Any documents, spreadsheets, calendar, note, password, dictionary or database entries related to the crimes listed above;

i. Any business records, to include ledgers, receipts, invoices, shipping documents, inventories, customer lists, bank account information, accounting or business software, customer communications, email communications, website or Social Media sites used for the business, and other business records and information reasonably related to the operation of an illicit business related to the crimes above; and

j. Any internet or browser entries or history related to the crimes listed above

2. Any other user or system files and data, contained on the subject device itself or an attached peripheral device such as a sim card or micro SD card, which would constitute evidence of violations described above.

3. Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store

data) any photographic or video format, and any content within smartphone applications such as WhatsApp, Snapchat, Marco Polo, Facebook and others that are stored on the devices.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.